GRACE BROWN, Appellant, *v.* GERMAN ROCK ASPHALT COMPANY, Respondent.

FRANK BROWN, Appellant, *v.* GERMAN ROCK ASPHALT COMPANY, Respondent.

**Streets and highways — negligence — duty of contractor, who had opened trench in street and refilled trench but had not restored pavement, to exercise care to keep street reasonably safe — whether such care was exercised, question of fact for jury.**

1. Where one under a contract with a municipal corporation has made an excavation in a public street or highway and refilled the same, it is his duty to anticipate the result upon it of a rainfall, and

to see that during and after a rain it is in a proper and safe condition, or to take such measures of prudent forethought as will protect the public passing by from danger.

2. Defendant, a contracting corporation, while laying underground conduits for a telephone company had opened a trench alongside the tracks of a trolley railroad and had filled the trench; but, owing to winter and cold weather coming on, did not restore the asphalt pavement over the trench. In the following spring heavy rains caused the trench to cave in, which brought the opening and the trench nearer the railroad tracks and a passenger, alighting from a trolley car, fell into the trench and received injuries for which this action is brought. It does not appear that the defendant inspected the work or took any pains to ascertain whether the dirt had settled between the time the trench was filled up until after the accident. Its contract was not complete until it had resurfaced the trench and it still had the power and the right of supervision over it. It was called upon, therefore, to exercise reasonable care to keep the highway reasonably safe until the asphalt had been replaced, or the street repaved. Whether it exercised such care was a question of fact for the jury and it was error for the trial court to dismiss the complaint.

*Brown* v. *German Rock Asphalt Co.*, 204 App. Div. 856, reversed.

(Argued June 7, 1923; decided July 13, 1923.)

Appeal, in each of the above-entitled actions, from a judgment entered November 22, 1922, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, overruling plaintiffs' exceptions ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment in favor of defendant upon the dismissal of the complaint by the court at a Trial Term.

*William P. Colgan* for appellants. Even though defendant, when it finished its work on December 2, 1917, left the pavement at the point where the accident happened in a safe condition, it should have seen that it remained in a safe condition until it was able to replace the pavement and it was negligent in not doing so. This duty called for an inspection from time to time which was never made. (*Johnson* v. *Friel,* 50 N. Y. 679;

*Allen* v. *B., R. & P. Ry. Co.*, 151 N. Y. 434; *Nayman* v. *City of New York,* 163 App. Div. 195; *Wensley* v. *City of New York,* 173 App. Div. 248; *Durr* v. *N. Y. C. & H. R. R. R. Co.*, 184 N. Y. 320.) The facts established by plaintiff should have been submitted to the jury for its determination on the question of defendant's negligence. (*Merwin* v. *City of Utica,* 172 App. Div. 51; *Wensley* v. *City of New York,* 173 App. Div. 248; *Faer* v. *City of New York,* 213 N. Y. 411; *Terry* v. *Village of Perry,* 199 N. Y. 79, 82; *Kantrowitz* v. *Brooklyn, Q. C. & S. R. R. Co.*, 173 App. Div. 192.)

*Ulysses S. Thomas* and *Ralph W. Dox* for respondent. It is a well-established rule that usual and ordinary slight defects in highways create no legal liability for accidents. (*Horan* v. *Hastorf,* 223 N. Y. 490, 496.) When the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but still an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law. (*Beltz* v. *City of Yonkers,* 148 N. Y. 67.) The duty of respondent was no greater than that of the municipality in the care of its streets. (*Schmidt* v. *City of New York,* 179 App. Div. 667; 228 N. Y. 572; *Fithian* v. *Degnon Contracting Co.*, 175 App. Div. 386, 390; *Butler* v. *Vil. of Oxford,* 186 N. Y. 444; *Horan* v. *Hastorf,* 223 N. Y. 490; *Moshier* v. *City of New York,* 190 App. Div. 111; *Lalor* v. *City of New York,* 208 N. Y. 431; *Hamilton* v. *City of Buffalo,* 173 N. Y. 72; *Grant* v. *Town of Enfield,* 11 App. Div. 359; *Derby* v. *Degnon-McLean Cont. Co.*, 112 App. Div. 324; *Carr* v. *Degnon Contracting Co.*, 48 Misc. Rep. 531.)

CRANE, J. Grace Brown and Frank Brown, her husband, brought action against the German Rock Asphalt
18

Company, Inc., to recover damages for personal injuries received by the wife in falling into a hole as she was alighting from a car of the International Railway Company on Elmwood avenue in the city of Buffalo. This hole was alongside and underneath the step of the car from which she alighted. The car had stopped for the purpose of discharging passengers at this place which was near the corner of West Utica street.

The defendant, the German Rock Asphalt Company, Inc., had opened a trench about two feet wide and two feet deep alongside the tracks in Elmwood avenue, over the underground conduits of the New York Telephone Company. This work had been commenced on October 2d, 1917, and the trenches had been filled up, but the repavement not completed by December, 1917.

At the place of the accident, in order to get under the water mains a trench had been dug out three feet deep and about three feet wide. A heavy rain had also caused the trench to cave in at Utica street which brought the opening and trench closer to the railroad tracks. After the openings and trench had been filled in the pavement was not restored to the condition that it was before removal, the top of the trench being covered over with old asphalt pavement. In December when the work stopped it was too cold to do asphalting.

The defendant's contract with the city was not complete until it had restored the pavement to its original condition and had fully completed the asphalting. This it did not do until sometime in April, 1918, and after the accident in question which occurred on the 18th day of April, 1918.

The paving of this street as left by the defendant in December, 1917, was unfinished; the trench had been filled, but the surface had not been repaved; it consisted of old broken asphalt placed on top of the trench level with the surface of the street. It does not appear that the defendant inspected the work or took any pains to

ascertain whether the dirt had settled between December, 1917, and the accident in the following April.

Where one under a contract with a municipal corporation has made an excavation in a public street or highway and refilled the same, it is his duty to anticipate the result upon it of a rainfall, and to see that during and after a rain it is in a proper and safe condition, or to take such measures of prudent forethought as will protect the public passing by from danger. (*Johnson* v. *Friel,* 50 N. Y. 679; *Allen* v. *Buffalo, R. & P. Ry. Co.,* 151 N. Y. 434.)

The street did not remain as the defendant left it. At the time the plaintiff fell a hole three to five inches deep had been worn in the covering or gravel. Mrs. Brown said: " It was a large round hole which came up near the track, and full of gravel like; * * * The asphalt was broken off, and all of this gravel was in it, and I should say it was two and one-half or three inches deep. * * * It looked like an old break; the gravel was ground down in it. * * * The break looked old as there had been a lot of traffic in it. It is a very busy corner there."

Mr. Brown said: " The street was torn up and I noticed this rough gravel like along the edge of the solid asphalt where the gravel was filled in, and that loose gravel was pushed away from it, made a kind of little trench like along a depression. This place, I should say was a couple or three feet in circumference, and varied around four or five inches deep, which I judged from gauging it, by setting my heel into the hole in places where it went up as far as my ankle."

The defendant having opened the street, dug the trench and refilled it was charged with the duty of restoring it to a reasonably safe condition. As its contract was not complete until it had resurfaced the trench it still had power and the right of supervision over it. Its work was not complete.

Under these circumstances it was called upon to exercise reasonable care to keep the highway reasonably safe until the asphalt had been replaced, or the street repaved. Whether it exercised such care was a question of fact for the jury upon the evidence as I have outlined it, and it was error to dismiss the complaint.

The judgment of the Appellate Division should be reversed and a new trial granted, costs to abide the event.

McLAUGHLIN, J. (dissenting).    When the respondent left the trench in December preceding the accident it was in a safe condition not only for pedestrians but for public travel generally.    An inspector of streets for the city of Buffalo testified that he then inspected the trench and that the work had been performed by the respondent in the usual way and that there was nothing for him to criticize or order changed; that there were no depressions or holes left in the street, and, in fact, that the trench had been filled and smoothed over in the way in which similar work was and for years had been done by all the asphalt companies in the city of Buffalo; that it could not have been repaved at that time of the year on account of the cold weather.    The character of the depression, including the length, width and depth of it, would not, under numerous decisions of this court, have made the city liable (*Horan* v. *Hastorf*, 223 N. Y. 490; *Lalor* v. *City of New York*, 208 N. Y. 431; *Hamilton* v. *City of Buffalo*, 173 N. Y. 72; *Beltz* v. *City of Yonkers*, 148 N. Y. 67; *Butler* v. *Village of Oxford*, 186 N. Y. 444; *Terry* v. *Village of Perry*, 199 N. Y. 79), and no greater obligation was imposed upon the contractor, the respondent, than there was upon the city.    (*Schmidt* v. *City of New York*, 179 App. Div. 671; affd., 228 N. Y. 573; *Fithian* v. *Degnon Cont. Co.*, 175 App. Div. 386.)

But if it be assumed that the respondent might have been subjected to liability, it could only be so because

it had either actual or constructive notice of the defect. No proof whatever was offered to justify a finding that the respondent, prior to the accident, had either actual or constructive notice.   The accident occurred at a place where there was much travel, and it is significant that not a single witness was produced who testified as to how long the depression had existed or that, prior to the accident, it was known to exist at all.   No proof was offered to show what caused the depression, whether the elements, heavy vehicles or other causes.   The plaintiff Grace Brown, who was familiar with the location and, it is fairly to be inferred, had been over the same spot several times before, did not, prior to the time she was hurt, know of the existence of the depression. She testified that she never, prior to that time, saw it.

The respondent, having left the trench in good condition the preceding December, could not be held liable for a defect in it unless the plaintiff proved that it had actual notice of such defect or that it had existed for such a length of time that in law it was bound to take constructive notice of the same.   There was no such proof offered, and for that reason the complaints were properly dismissed.

I, therefore, dissent from the decisions about to be made and vote to affirm the judgments.

HISCOCK, Ch. J., HOGAN and CARDOZO, JJ., concur with CRANE, J.; McLAUGHLIN, J., reads dissenting opinion, with whom ANDREWS, J., concurs; POUND, J., not voting.

Judgments reversed, etc.