# Bannon v. The Pennsylvania Railroad Company, Appellant.

*Negligence—Proximate and remote cause—Presumption.*

The general rule is that a man is answerable for the consequences of a fault which are natural and probable, and might therefore be foreseen by ordinary forecast, but an individual is not presumed to contemplate the coincidence of events having no probable or natural connection in the mind, and which cannot by ordinary thoughtfulness be foreseen as likely to happen in consequence of the act in which he is engaged.

Where there has intervened between the defendant's act and the injury, an independent illegal act of a third person, or one induced by irresponsible agencies or trespassers, which produced the injury, and without which it would not have happened, and such act is held to be the approximate cause of the injury, the defendant is not liable.

Where the effect of the evidence is merely to establish that there are two independent causes, either of which may have been the proximate cause of the injury, the burden is upon the plaintiff to show that the cause for which the defendant is responsible, was the one which produced the injury for which recovery is sought.

The question of negligence is one of law for the court, only where the facts are such that all responsible minds must draw the same conclusions from them, but when the conclusion follows as a matter of law, that the plaintiff's right to recover is not made out upon any view that can be properly taken of the facts the evidence tends to establish, it is the duty of the court to withdraw the case from the consideration of the jury and direct a verdict.

*Negligence—Fall of fence—Proximate and remote cause—Evidence—Question for court.*

In an action against the owner of a fence to recover damages for personal injuries caused by the fall of the fence, binding instructions for the defendant should be given to the jury where the uncontradicted evidence showed that the fall of the fence had been caused by a large crowd of trespassers climbing upon it, although warned to keep off, and that the fence although nine years old and with some of its parts rotten, did not give way under the pressure for over ten minutes. In such a case it is immaterial that on other occasions crowds had gathered on the fence, and that the owner had knowledge of this.


Argued May 2, 1905. Appeal, No. 112, April T., 1905, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1903, No. 336, on verdict for plaintiff in case of Joseph F. Bannon v. The Pennsylvania Railroad Company. Be-

232    BANNON *v.* THE PENNA. R. R. CO., Appellant.

fore BEAVER, ORLADY, PORTER, MORRISON and HENDER-
SON, JJ.    Reversed.

Trespass to recover damages for personal injuries.

The facts relating to the accident are stated in the opinion
of the Superior Court.

Verdict and judgment for plaintiff for $1,000.    Defendant
appealed.

*Error assigned* was in refusing binding instructions for de-
fendant.

*M. W. Acheson, Jr.,* of *Patterson, Sterrett & Acheson,* for ap-
pellant.

*F. C. McGirr,* of *Marron & McGirr,* for appellee, cited :
Shearman & Redfield on Negligence (5th ed.), sec. 39, p. 42;
B. & O. R. R. Co. v. Sulphur Spring Independent School Dist.,
96 Pa. 65 ; Scott v. Hunter, 46 Pa. 192 ; Butterman v. Mc-
Clintic-Marshall Construction Co., 206 Pa. 82.

OPINION BY ORLADY, J., October 9, 1905 :

There is no material fact in dispute in this case and the
validity of the verdict depends upon the accuracy of the an-
swer given by the learned trial judge in the court below to the
appellant's first point(1st assignment of error), to wit : " Under
all the evidence, the plaintiff is not entitled to recover and the
verdict of the jury must be in favor of the defendant," which
was refused.    The plaintiff was a policeman of the city of
Pittsburg and while transferring a prisoner in his custody from
a patrol box to the station house he was injured by the fall of
a fence upon him.

The defendant company is the owner of a tract of land abut-
ting on Carson street, which is a busy thoroughfare of the
city ; on the north side of it are houses and stores and on the op-
posite side the defendant company's land is used for tracks
and yard purposes, and is some feet above the level of Carson
street.    At the property line the company maintained on its
own land a retaining wall, about 250 feet in length, and having
on its top a board fence about three or four feet in height ; the

wall and fence together being about nine or ten feet high above the level of the sidewalk, which at that place was six feet in width, and there was located at the curb line a police parol box.

On August 24, 1902, the plaintiff with another policeman made an arrest and took the prisoner to the patrol box in order to send a call to the police station for a wagon; a crowd of persons promptly gathered on the street and pavement, and some persons, the number varying according to the testimony from thirty to 100, entered upon the defendant company's land and inside of the fence, against which they leaned and looked over to view the policemen and their prisoner. The plaintiff's fellow officer testified: " Officer Bannon ordered the people to move away from around the patrol box and to get off the fence too, in case it would come over. I told them that that fence might come down. It wasn't safe. Just as soon as we got there with the prisoner, about ten minutes before the wagon came; my attention had been directed to it, and I said it wasn't safe; for them to get off the fence. Officer Bannon heard me, and joined in what I said. He told them to get off the fence, it wasn't safe. They wouldn't obey and the crowd on the fence kept getting bigger." The plaintiff stated: " I was standing on the sidewalk and had hold of a prisoner. I was alongside of the wall, and the crowd gathered in close to the box, and I went out to shove the children away from the box, the wagon was coming pretty close then, to make room so we could put him in the wagon. While I was out doing this the fence came down on me ; it struck me on the head and pinned my face down on the sidewalk, doubled me up like a knife."

The fence had been built of heavy oak sills, with post and board uprights, about nine years prior to this accident, and had been inspected, repaired and painted at irregular intervals, but at the time of the accident some parts indicated a badly decayed condition. It was not unusual for persons, employees of the company and others, to lean on the fence so as to view the matters of public interest in the street below, and on occasions similar to this arrest, persons would climb up to the fence so as to the better see the officers and their prisoners at the patrol box. There is no evidence tending to show that such a use of the defendant's property was by its consent or permission, nor that the fence as it then stood was, independ-

ent of external force, a dangerous construction or a menace to the safety of persons using the sidewalk. It clearly appears, and must be conceded as a fact that the immediate cause of the fall of the seventy-five feet of the board fence was induced by the weight of the crowd of sightseers who were on the land as trespassers, and that the portion of the fence to which the special pressure was not applied was sufficiently supported by its own construction to retain its proper position on the wall. The fence and wall had been erected to preserve the property line and as a barrier to prevent the intrusion of strangers ; it had withstood the forces of nature for nine years, and of this unusual weight of a crowd of trespassers for at least ten minutes before it yielded and fell into the street.

The general rule is that a man is answerable for the consequences of a fault which are natural and probable, and might therefore be foreseen by ordinary forecast, but an individual is not presumed to contemplate the coincidence of events having no probable or natural connection in the mind, and which cannot by ordinary thoughtfulness be foreseen as likely to happen in consequence of the act in which he is engaged : Knight v. Abert, 6 Pa. 472; McGrew v. Stone, 53 Pa. 436 ; Fairbanks v. Kerr, 70 Pa. 86. The principle is aptly illustrated by Judge SHARSWOOD, in Gillis v. Pennsylvania Railroad Co., 59 Pa. 129, as follows : " I am bound to have the approach to my house sufficient for all visitors on business or otherwise ; but if a crowd gathers on it to witness a passing parade and it breaks down, though it may be shown not to have been sufficient even for its ordinary use, I am not liable to one of the crowd. I owe no duty to him. If a traveler by foot, on the open track of a railroad, crosses a bridge, which ought to be, but is not in its ordinary use, strong enough to bear a locomotive and a train of cars, and a rotten board breaks down under him, the company are not liable to him, for they owe him no duty." It is a fundamental principle applicable alike to breaches of contracts and to torts, that in order to found a right of action there must be a wrongful act done, and a loss resulting from that wrongful act; the wrongful act must be the act of the defendant, and the injury suffered by the plaintiff must be the natural and not merely a remote consequence of the defendant's act. The wrong done

and the injury sustained must bear to each other the relation of cause and effect; and the damages whether they arise from withholding a legal right or the breach of a legal duty, to be recoverable, must be the natural and proximate consequence of the act complained of: 2 Greenleaf on Ev., sec. 254–6 and notes; Sedg. on Damages, sec. 31. As said in McGrew v. Stone, 53 Pa. 436, "We are not to link together as cause and effect, events having no probable connection in the mind and which could not by prudent circumspection and ordinary thoughtfulness be foreseen as likely to happen in consequence of the act in which we are engaged. It may be true that the injury would not have occurred without concurrence of our act with the event which immediately caused the injury, but we are not called upon to suffer for it unless the other event was the effect of our act, or were within the probable range of ordinary circumspection when engaged in the act." Further reasoning on the subject is given in Penna. Railroad Company v. Kerr, 62 Pa. 353, "It is certain that in almost every considerable disaster the result of human agency and dereliction of duty, a train of consequences generally ensue, and so ramify, as more or less to affect the whole community. Indemnity cannot reach all these results, although parties suffer who are innocent of blame. This is one of the vicissitudes of organized society. Every one in it takes the risk of these vicissitudes. Willfulness itself cannot be reached by the civil arm of the law for all the consequences of consequences, and some sufferers necessarily remain without compensation." It is within the knowledge of all that within our varied departments of life there are frequent casualties for which the law has been able to furnish no just rule that would fix responsibility, or liability for the consequences upon anybody. They are often the results of want of care, thought or prudence or the fault of the party suffering; the law cannot fix rules which render anyone answerable in damages. They are casualties, and the resultant injuries can only be regarded as the misfortune of the party suffering: Worrilow v. Upper Chichester Twp., 149 Pa. 40; McCauley v. Logan, 152 Pa. 202.

The foundation of this action is negligence and the accusation of negligence is only made out by showing a breach of a legal duty by the defendant owing to the plaintiff. Negligence

cannot be predicated on one's lawful and ordinary use of one's own premises : Alpern v. Churchill, 53 Mich. 607 (19 N. W. Repr. 549) ; Cosulich v. Standard Oil Co., 122 N. Y. 118 (25 N. E. Repr. 159). There is no negligence in a legal sense which can give a right of action unless there is a violation of a legal duty to exercise care : Cooley on Torts, p. 660 ; Larmore v. Iron Co., 101 N. Y. 391 ; s. c., 54 Am. Rep. 718 ; Howland v. Vincent, 10 Met. 371 ; s. c., Am. Dec. 442. It is also declared to be the law by eminent text writers, that however great the defendant's negligence, if it was committed without violating any duty which he owed either directly to the plaintiff, or to the public in a matter whereof he had a right to avail himself, there is nothing for the law to redress, and an action will not lie : Bishop Non. Cont. Law, sec. 446 ; Shearman & Redfield on Negligence (4 ed.), sec. 8. Had this fence fallen without special circumstance of violence and injury resulted to a person upon the public sidewalk an entirely different question would be presented. It could not be urged with reason that the persons who were trespassers on the railroad lot and joined with others in overthrowing the fence into the street could recover from the defendant for injuries thereby received. Their own wrong would bar their right to recover anything. The defendant owed them no duty at that place. To entitle the plaintiff to recover by reason of their act, it is necessary to convert the illegal conduct of these trespassers into a probable, and reasonably to be anticipated act by the defendant. Conceding that the company owed no duty to the trespassing crowd, yet it is urged that because the fence was nine years old and in a state of partial decay, somewhat overhanging at the top, and on former similar occasions persons trespassed in like manner, the company should have absolutely barred the invasion of the crowd or made the fence sufficiently strong to withstand its force. When we recall that under the undisputed facts there was no gateway into the premises ; no path or used way through or over it ; no invitation or permission given to use it ; that the danger was apparent and that notice was given of it ; that the stone wall and fence were erected, and had served the purpose of their construction for nine years, and actually withstood for ten minutes, the force of a crowd which was continually increasing,—and which refused

to obey the caution of the two policemen,—that it was not safe
and might fall, that the time of such a gathering of persons
could not be anticipated so as to prevent by force an invasion
· of the defendant's premises by a crowd of trespassers; and that
it would be as unreasonable as it would be impossible to ap-
proximate fairly the degree of force that such an uncertain
body, as a crowd of persons, could or would apply to such a
structure, in order to provide a fence of corresponding resis-
tance to assure its safety ; it would be taking a long step in ad-
vance of any decided case to sustain this verdict.   It has been
held by the courts of our own and many sister states that, where
there has intervened between the defendant's act and the in-
jury, an independent illegal act of a third person, or one induced
by irresponsible agencies or trespassers, which produced the in-
jury, and without which it would not have happened, and such
act is held to be the proximate cause of the injury, that the de-
fendant is not liable.   In Curtin v. Somerset, 140 Pa. 70, it is
held in order that a person who has been injured by an accident
may hold another responsible therefor on the ground of negli-
gence there must be a causal connection between the negligence
and the hurt; and such causal connection is interrupted by the
interposition between the negligence and the hurt of any inde-
pendent human agency.   See also Fitzmaurice v. Fabian, 147
Pa. 199 ; Congregation v. Smith, 163 Pa. 561 ; Tutein v. Hur-
ley, 98 Mass. 211 ; s. c. 93 Am. Dec. 154 ; Cuff v. Newark &
N. Y. R. R. Co., 35 N. J. L. 17 ; s. c. 10 Am. Rep. 205 ; Crain
v. Petrie, 6 Hill, 522 .

In Yoders v. Amwell Township, 172 Pa. 447, it is said by
DEAN, J., " Speculating on the doctrine of proximate and re-
mote cause in supposed or hypothetical cases seems to have
been a sort of intellectual recreation with text writers since the
Squib case in 2 Wm. Black. 892; but approximate certainty
in the administration of justice, in evidence in an issue, is all
we can hope to attain to ; was the consequence such as under
the circumstances might and ought to have been foreseen and
provided against ?   The proximate cause is the dominant con-
trolling one, and not those which are mere incidents.   Or as
stated in Phila. & Reading R. R. Co. v. Hummell, 44 Pa. 375,
" Precaution is a duty only so far as there is reason for ap-
prehension.   No one can complain of want of care in another

when care is only rendered necessary by his own wrongful act. It is true that what amounts to ordinary care under the circumstances is generally to be determined by the jury. Yet a jury cannot hold parties to a higher standard of care than the law. requires, and they cannot find anything negligence which is less than a failure to discharge a legal duty. If the law declares, as it does, that there is no duty resting upon anyone to anticipate wrongful acts in others, and to take precautions against such acts, then the jury cannot say that a failure to take such precautions is a failure in duty and negligence." A trespasser may in some special instances recover, but in such cases it is not enough merely to show negligence. The plaintiff must do more and make it appear that there was a want of care and recklessness equivalent to a wanton or intentional disregard of duty : Gillis v. Penna. R. R. Co., 59 Pa. 129 ; Hydraulic Works Co. v. Orr, 83 Pa. 332 ; Gillespie v. McGowan, 100 Pa. 144 ; Enright v. Railroad Co., 198 Pa. 166 ; Duffy v. Sable Iron Works, 210 Pa. 326.

Where there is no conflict of testimony; and either the standard of individual duty has been judicially determined ; or the rights of owners of property have been judicially defined, the decision of the question of negligence affecting the plaintiff's right to recover and the liability of the defendant, becomes the duty of the court : Gramlich v. Wurst, 86 Pa. 74 ; Horstick v. Dunkle, 145 Pa. 220 ; Gray v. Penna. Railroad Co., 172 Pa. 383. Where the effect of the evidence is merely to establish that there are two independent causes, either one of which may have been the proximate cause of the injury, the burden is upon the plaintiff to show that the cause for which the defendant is responsible was the one which produced the injury sought to be recovered for : Boehm v. Bethlehem Boro., 4 Pa. Superior Ct. 385. In every jury trial there is a preliminary question for the court. The court must decide whether or not there is sufficient evidence upon which the jury could base a verdict for the plaintiff. If there is no evidence, or if it is such that, in a fair legal construction, it does not sustain the plaintiff's case, and that no fair inference to be drawn from it sustains it, the court should give the peremptory instruction to find for the defendant. It is not the province of the court to weigh the evidence or decide between conflicting statements

of witnesses or to decide what inferences should be drawn from uncontradicted evidence, if different minds could fairly come to different conclusions from it. The question of negligence is one of law for the court, only where the facts are such that all reasonable minds must draw the same conclusions from them, but when the conclusion follows as a matter of law, that the plaintiff's right to recover is not made out upon any view that can be properly taken of the facts the evidence tends to establish, it is the duty of the court to withdraw the case from the consideration of the jury and direct a verdict.

The first assignment of error is sustained and the judgment is reversed.