Krisovich *v.* John Booth, Inc., Appellant.

Argued March 6, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Matthew D. Mackie,* with him *Welles & Mackie,* for appellant.

*A. Homanich,* with him *George A. Yavorek* and *Homanich, Dutka & Yavorek,* for appellee.

Opinion by Hirt, J., April 11, 1956:

Spring Brook Water Service Company supplies water and gas to users in various parts of Lackawanna County. On April 30, 1953, this company entered into a contract with John Booth, Inc., for the laying of an eight inch gas main along the west line of Ridge Road between the Borough of Jermyn and Dickson City. The contract provided for the excavation of a ditch about four feet deep and two feet wide, and the tamping of the backfill by mechanical means after the laying of the pipe. In the Borough of Blakely the gas line was laid within the boundaries of a dirt sidewalk. Between 5 and 6 p.m. on October 29, 1953, plaintiff, on his way home from a bakery shop, was walking on the sidewalk along Ridge Road in the Borough when without warning the earth suddenly subsided under him and his right leg for its entire length, up to the crotch of his body, became trapped in mud and water in the trench which had been backfilled by the defendant construction contractor. The plaintiff was unable to extricate himself, and the more he struggled the more firmly his leg became embedded in the mud in the trench. It required the combined efforts of three men, over a period of 25 minutes, to remove the material which held him fast and to pull him out of the hole. He was conscious of pain in his groin as he struggled to free himself and from his strained position, with one leg buried in the trench, he suffered a direct right traumatic inguinal hernia. The hernia was reduced by surgery but he was unable to resume his work as a coal miner until January 19, 1954.

In the present trespass action plaintiff recovered a verdict for $2,500 against the defendant John Booth, Inc., alone. In the light of the verdict we must take it that the trench had been backfilled shortly before plaintiff's injury, but there is nothing in the case which

suggests that the dangerous condition was discernible or that plaintiff knew or had reason to know of it. Plaintiff as a member of the traveling public was entitled to use the dirt path and, in the absence of manifest danger, to assume that the backfilling of the ditch had restored it to a state of reasonable safety. The construction contract called for tamping the fill in six inch layers and the evidence is that water could not have accumulated in the trench in volume sufficient to cause the subsidence if the fill was of proper material and had been properly tamped. The verdict establishes that the trench at the point of the injury was not backfilled in accordance with the contract. The resulting dangerous condition was foreseeable by the defendant and that contractor is chargeable with negligence because of that fact. The question is whether this negligence, which proximately caused the injury, was actionable under the circumstances.

At the time of plaintiff's injury the work of laying the gas main had been accepted by the Spring Brook Company as full performance of the construction contract, and John Booth, Inc., was no longer in possession of the land upon which the work had been done. On these grounds defendant in this appeal contends that it is not liable. For the further reason that there was no privity of contract between John Booth, Inc., and the plaintiff the appellant asserts that it owed no duty to him. There is no merit in these contentions; the judgment entered on the verdict will be affirmed.

Liability of a construction contractor, under the rule of our early cases, was restricted to persons as to whom a contractual relationship existed. And a contractor was relieved from liability to a third person for its negligent act, when possession of the premises was surrendered by the contractor after completion and acceptance of the work. Thus in *Curtin v. Somerset,*

140 Pa. 70, 21 A. 244, it was held that because a man is not responsible for a breach of duty where he owes no duty, and a contractor's duty to the public ceases on the owner's acceptance of the work, a contractor may be liable to his employer after acceptance, but when work covered by the contract is completed and accepted by the party contracting to have the work done, none other than the contracting party has the right of action against the contractor. Similarly (to refer to another of many cases to the same effect) in *First Presbyterian Congregation v. Smith et al.,* 163 Pa. 561, 30 A. 279, it was held: "Where a contractor is employed by a municipality to build a sewer, and he has finished the work, and the sewer has been accepted by the city, the contractor is not liable, at suit of a property owner, for an injury to property caused by a break in the sewer, although the break was due to the negligent construction of the sewer." That in general was the law until the "epochal" decision of the Court of Appeals of New York in *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050. The opinion of Judge CARDOZO in that case, as every lawyer knows, has become a landmark in the law of negligence. No longer, when the consequences of negligence may be foreseen, does liability grow out of contract. The *Mac-Pherson* case, once and for all, "put the source of the obligation where it ought to be . . ." it "put its source in the law."

Beginning with *Grodstein v. McGivern,* 303 Pa. 555, 154 A. 794 and consistently down to the present day, the rule of *MacPherson v. Buick Motor Company* has been engrafted on our law, as it has been elsewhere, in practically all other jurisdictions. The authorities which unanimously support that statement have been collected and are cited in the opinion of the present Chief Justice in *Foley v. The Pittsburgh-DesMoines*

*Co.,* 363 Pa. 1, 30, 31, 68 A. 2d 517. In the *MacPherson* case liability was imposed on the defendant because of a defective chattel. Following the *Grodstein* case, supra, our Supreme Court has consistently extended the principle of the *MacPherson* case by imposing liability also on any person who on behalf of the possessor of *land* negligently creates an artificial condition resulting in injury to others; and this, regardless of whether the contractor has surrendered possession of the land and his work has been accepted. The present-day rule is thus stated in the Restatement, Torts, §385: "One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others within or without the land for bodily harm caused to them by the dangerous character of the structure or condition *after his work has been accepted by the possessor* under the same rules as those stated in §§394 to 398, 403 and 404 [which restated the principles of the *MacPherson* case] as determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others." (Italics supplied)

In *Bisson v. John B. Kelly, Inc.,* 314 Pa. 99, 170 A. 139, our Supreme Court in referring to this "duty imposed by law" said: "It is a primary *social* duty of every person to take thought and have a care lest his action result in injuries to others. This social duty *the law* recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequences of his acts of omission or commission which he, as a reasonable human being, should have foreseen." Our court has applied the above principles which had their origin in the *MacPherson* case. Thus in *Bastl et al. v. Papale,* 142 Pa. Superior

Ct. 33, 15 A. 2d 476, a cement contractor was held liable for injury to a pedestrian who stumbled over a low obstruction negligently placed by the contractor on the sidewalk after he had completed his work. In that case we said: "Even though the owner [of the premises] had actually accepted the work, the defendant still owed a 'social-legal' duty to users of the sidewalk and he was properly charged with negligence in failing to anticipate and guard against a foreseeable dangerous condition created by him."

Under the rule of the authorities, beginning with *Grodstein v. McGivern,* supra, now firmly established in our law, the defendant in the present case was chargeable with actionable negligence although he had completed his contract and the work had been accepted by the township. There was credible evidence from which the jury was justified in concluding that the injury resulted from negligent acts or omissions of the defendant, from which he must have foreseen the possibility of injury to a user of the sidewalk, such as this plaintiff.

Judgment affirmed.