Siegler *v.* Counties Contracting & Construction
Company, Appellant.
Kreider *v.* Siegler et al., Appellant.

Argued March 17, 1964. Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*F. Lyman Windolph,* with him *John I. Hartman, Jr.,* and *Windolph, Burkholder & Hartman,* for appellant.

*Theodore L. Brubaker,* for appellees.

*W. Hensel Brown,* and *Brown & Zimmerman,* for appellee.

OPINION BY MONTGOMERY, J., June 30, 1964:

Earl N. Siegler, driving his 1949 International one-and-one-half ton truck with a flat bed body westwardly on the right-hand side of West Main Street in Strasburg, Lancaster County, Pennsylvania, struck a depression in the street and as a result crossed to the left lane and ran into a 1958 Nash four-door sedan automobile owned and being operated by Franklin H. Kreider eastwardly on that street. Mrs. Mary L. Kreider was a passenger in her husband's automobile. The accident occurred at or about 9:15 p.m. on February 16, 1961.

Siegler brought an action in trespass against the Counties Contracting & Construction Company (Contractor) for damages to his truck and the Kreiders brought suit against both that company and Siegler for damages to the Nash automobile and for personal injuries.

Contractor admitted that it "did dig the ditch in question in the 100 block of West Main Street in Strasburg which is involved in the suit." The evidence disclosed that it had been dug in connection with work being done by Contractor for the Bell Telephone Company, whose building was nearby. It was described as being twelve to eighteen inches wide, running southwardly from a manhole in the street located about two and one half feet from the northerly line of this thirty-foot street to the other line of the street. When it had been dug one month before the accident flares and trestles had been placed about it to prevent traffic from running into it. However, the ditch had thereafter been filled by Contractor with stones and earth and refilled on one or two occasions by someone whose identity was not disclosed. The refilling had been necessitated by subsidence of the fills previously placed therein. The last refilling had occurred one or two days before the accident. At the time of this accident a depression existed, described as being from four to eight inches deep, with two inches of water in it. It had rained the night before and there had also been water from melting snow, a bank of which stood on the side of the street. However, no witness could say how long the condition of the ditch at the time of the accident had existed.

Plaintiffs' witness, T. H. Long, Chief of Police, testified that at eleven o'clock the night before the accident he had crossed over the ditch while on patrol "And at that time it was no hazard", but that the next morning at 9:30 it was definitely a hazard.

Another witness for the plaintiffs, E. D. Ressler, said, "I don't know whether the ditch was settled the day before [the accident] or not."

J. W. Reinhart, another witness for the plaintiffs, said that the ditch was noticeable the day before the accident, "but more pronounced the following day."

These appeals are by Contractor from judgments entered on verdicts against it in favor of both Siegler and the Kreiders. It seeks judgment in its favor on the contention that the plaintiffs had failed to prove (1) the terms of the contract between it and the telephone company, (2) the identity of the persons who had refilled the ditch or, (3) that it had actual or constructive notice of the existence of a hazardous condition at the time of the accident.

These suits charged Contractor with negligence in digging a ditch on a public street and thereby causing a hazard to vehicular traffic and permitting it to remain without barriers, signs, lights or covering.

There is no merit in Contractor's first contention. Regardless of the terms of the contract with the telephone company, "It is a primary *social* duty of every person to take thought and have a care lest his action result in injuries to others." *Bisson v. John B. Kelly, Incorporated,* 314 Pa. 99, 110, 170 A. 139, 143 (1934). We have followed that rule even though the owner of the premises being benefited by the contract actually had accepted the work. *Krisovich v. John Booth, Inc.,* 181 Pa. Superior Ct. 5, 121 A. 2d 890 (1956).

The second and third contentions may be considered together since they generally relate to evidence of negligent creation of a hazardous condition. Contractor admits having dug the ditch and it reasonably may be concluded that it backfilled it since its argument relates to the additional acts of refilling after subsidence had taken place. We are of the opinion that the identity of the person or agency that refilled the ditch is

not important. If the original backfilling done by contractor two or more weeks before the accident was done in such a way as to permit subsidence even after two or more refillings by persons unknown, these would be circumstances from which a jury could charge Contractor with negligence in not restoring the street to a reasonably safe condition. It could have found that the condition as restored required more substantial filling, more tamping, a covering, or notice to the traveling public of the existence of danger. The duty was on Contractor to backfill the ditch in such a manner as to restore the street to a state of reasonable safety. *Krisovich v. John Booth, Inc.,* supra. The weather conditions during this period, which consisted of rain and snow, freezing and melting intermittently, and the probable consequent effect on its operation were factors Contractor should have taken into consideration. The fact that there had been a refilling of the ditch as late as the day before the accident, which made the condition reasonably safe *temporarily,* would not fully satisfy Contractor's obligation.

Under the law and the evidence the verdicts for plaintiffs are sustainable. The issues were for the jury. *Walsh v. Pittsburgh,* 379 Pa. 229, 108 A. 2d 769 (1954).

Judgments affirmed.